IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| UNITED STATES OF AMERICA | CRIMINAL NO. 2:24-cr-00508 |
|---|---|
| v. | 18 U.S.C. § 2 |
|  | 18 U.S.C. § 1343 |
|  | 18 U.S.C. § 981(a)(1)(C) |
| **KA HO CHAN** | 18 U.S.C. § 982(a)(2)(A) |
|  | 28 U.S.C. § 2461(c) |
|  | **INFORMATION** |

## BACKGROUND

1. The Defendant **KA HO CHAN** has a registered driver's license with the State of South Carolina.

2. The Defendant **KA HO CHAN**, along with his family, own and operate various restaurant business in the District of South Carolina and elsewhere.

*The Small Business Administration and CARES Act*

3. The United States Small Business Administration ("SBA") is an executive branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enables and provides for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

4. In March 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) to help businesses impacted by COVID-19 to continue paying their employees.

*PPP Loan*

5. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

6. The PPP program provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

7. To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as filed federal income tax documents.

8. PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located in Virginia and/or Oregon. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

9. The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments.

The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, clothing, jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

10. Bank of America was a third-party approved participating lender in the PPP program and, as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

*EIDL Loans*

11. The SBA was authorized to provide Emergency Injury Disaster Loans ("EIDL") loans to eligible small businesses, private non-profits, agricultural businesses, and religious institutions experiencing substantial financial disruptions due to the COVID-19 pandemic. The CARES Act also authorized the SBA to issue emergency advances, also referred to as grants, of up to $10,000.00 depending on the number of employees a small business employed.

12. These funds could only be used to pay legitimate business expenses, such as wages, operating costs, rent or mortgage payments, and other business debt. An EIDL applicant seeking relief due to the COVID-19 pandemic was required to submit an online application to the SBA and provide information about the business, such as the number of employees, gross revenue for the 12-month period preceding January 31, 2020, and operating costs or cost of goods sold during that same period.

13. The information provided by the applicant was used by the SBA to determine the amount of the EIDL principal and emergency advance. Although supporting documentation was not required unless requested by SBA personnel during the EIDL evaluation process, the applicant had to certify under penalty of perjury that all information in the application was true and correct.

Applicants were warned that providing false statements to the SBA may result in criminal sanctions.

## Counts 1 and 2
## (Wire Fraud)

**THE UNITED STATES ATTORNEY CHARGES:**

14. The factual allegations of paragraphs 1 through 13 of this Information are re-alleged as though fully set forth herein.

*The Scheme to Defraud*

15. From on or about April 2020 to the present, in the District of South Carolina and elsewhere, the Defendant, **KA HO CHAN,** as a principal and/or aider and abettor, knowingly devised and intended to devise a scheme to defraud the Small Business Administration and its approved third-party lenders, and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises, and the concealment of material facts, and during such period, knowingly transmitted and caused to be transmitted in interstate commerce, by means of wire communications, certain electronic signals, for the purpose of executing the scheme and artifice to defraud relating to the fraudulent application for, and receipt of, EIDL and PPP loan funds, in violation of Title 18, United States Code, Section 1343.

*Manner and Means of the Scheme to Defraud*

16. It was a part of the scheme that **KA HO CHAN**, and others both known and unknown to the United States Attorney, did:

    a. Defraud financial institutions and the Small Business Administration using interstate wires to fraudulently submit information and documents to obtain an EIDL loan and EIDL grant.

    b. Create fraudulent businesses and/or falsify information relating to

businesses costs of goods sold and/or gross revenues in support of EIDL loan application.

  c. Falsely represent the number of employees businesses had in support of an EIDL grant request.

  d. Once the EIDL loan proceeds were deposited, Defendant **KA HO CHAN** used the proceeds on non-qualifying expenses.

17. On or about the dates specified below, in the District of South Carolina, and elsewhere, Defendant **KA HO CHAN**, as a principal and/or aider and abettor, for the purpose of executing the scheme and artifice described above, did transmit and cause to be transmitted in interstate commerce, by means of wire communications, the writings, signs, and signals, further described below, on or about the dates specified:

| Count | Date | Amount | Description of Wire Communication |
|---|---|---|---|
| **1** | 6/23/2020 | $1,000.00 | Wire from the U.S. Treasury or SBA of EIDL grant to Defendant **KA HO CHAN** bank account ending in 2404 at Bank of America. |
| **2** | 6/26/2020 | $149,900.00 | Wire from the U.S. Treasury or SBA of EIDL funds to Defendant **KA HO CHAN** bank account ending in 2404 at Bank of America. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

# **FORFEITURE**

WIRE FRAUD:

Upon conviction to violate Title 18, United States Code, Section 1343 as charged in this Information, the Defendant, **KA HO CHAN**, shall forfeit to the United States, any property, real or personal, which constitutes, is traceable, or is derived from proceeds traceable to such offenses.

PROPERTY:

Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c), the which is subject to forfeiture upon conviction of the Defendant for the offenses charged in this Information includes, but is not limited to, the following:

>Forfeiture Judgment/Proceeds:
>
>A sum of money equal to all proceeds the Defendant obtained directly or indirectly as the result of the offenses charged in this Information, that is, a minimum of $150,900.00 and all interest and proceeds traceable thereto, and/or such sum that equals all property traceable to his violation of 18 U.S.C. § 1343.

SUBSTITUTE ASSETS:

If any of the property described above, as a result of any act or omission of a Defendant:

    a. cannot be located upon the exercise of due diligence;
    b. has been transferred or sold to, or deposited with, a third party;
    c. has been placed beyond the jurisdiction of the court;
    d. has been substantially diminished in value; or
    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the Defendant up to the value of the forfeitable property;

Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c).


ADAIR F. BOROUGHS
UNITED STATES ATTORNEY

By: /s/Amy Bower_____
Amy F. Bower (#11784)
Assistant U.S. Attorney
151 Meeting Street, Suite 200
Charleston, South Carolina 29401
Tel.:   (843) 727-4381
Email: Amy.Bower@usdoj.gov